UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE JOY CLARKE,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant.[1] | Case No.: 16-cv-1595 BTM(BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NOS. 14, 15]** |

Plaintiff Melanie Joy Clarke seeks review of the Commissioner of Social Security's denial of her application for disability insurance benefits and Supplemental Security Income. The parties have filed cross-motions for summary judgment. (ECF Nos. 14, 15.) For the reasons discussed below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

---

[1] Defendant notes that Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted as the party defendant.

## I. PROCEDURAL HISTORY

On May 23, 2012, Plaintiff filed two applications with the Social Security Administration, one seeking disability and disability insurance benefits under Title II of the Social Security Act, and a second seeking supplemental security income (SSI) under Title XVI of the Social Security Act. Administrative Record (AR) 216-21, 222-27. In both applications, she alleged she was disabled because she suffered from rheumatoid arthritis, fibromyalgia, anemia, asthma, acid reflux disease, sickle cell trait, depression, anxiety, severe insomnia, type 2 diabetes, neuropathy, blood clots on her lungs, degenerative bone disease, and constipation. AR 254. Plaintiff was born on September 24, 1970. AR 216. Her alleged disability onset date was June 1, 2001. Id.

Plaintiff's claim was denied initially on October 30, 2012, and upon reconsideration on June 11, 2013. AR 107-08, 125-26. On July 30, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). AR 147-48. A hearing was held by ALJ Keith Dietterle on October 2, 2014, at which Plaintiff was represented by an attorney. AR 50-76, 183-202. At the hearing, a medical expert and a vocational expert testified. AR 50-76, 203-07.

On November 22, 2014, the ALJ issued a written decision denying Plaintiff's claim for benefits. AR 31-44. Plaintiff filed a request for review with the Appeals Council. Plaintiff's request for review was denied on April 29, 2016, at which point the ALJ's denial of her claim became the final decision of the Commissioner of Social Security ("Commissioner"). AR 1-5.

On June 23, 2016, Plaintiff filed the instant action seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer, along with the administrative record, on September 26, 2016. (ECF Nos. 11, 12.) In accordance with this Court's briefing schedule, on December 12, 2016, Plaintiff filed a motion for summary judgment. (ECF No. 14.) On January 9, 2017, the Commissioner filed a cross-motion for summary judgment and response

in opposition to Plaintiff's summary judgment motion. (ECF Nos. 15, 16.) Plaintiff did not file a response to the Commissioner's cross-motion/ opposition.

## II. ALJ'S FINDINGS AND CONCLUSIONS

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1530.[2]

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2001, the alleged disability onset date. AR 33. At step two, he found Plaintiff had the following severe impairments: diabetes mellitus, asthma, anemia, obesity, dysthymic disorder, personality disorder, somatoform disorder, anxiety disorder, and posttraumatic stress disorder. Id.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 34-36. In making this determination, he found that Plaintiff had "moderate difficulties" in "concentration, persistence or pace." AR 35.

Next, the ALJ found that Plaintiff "has the residual functional capacity [(RFC)] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with the exception of a number of physical limitations, and that "she is capable of performing simple, routine tasks in a non-public setting." AR 36.

---

[2] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; see Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

1    At step four, the ALJ found Plaintiff was unable to perform past relevant work as a retail sales clerk. At step five, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff would be able to perform jobs existing in the national economy, including the positions of a mail clerk (DOT No. 209.687-026), with 70,000 positions nationwide, and marker (DOT 209.587-034), with 213,000 positions nationwide. AR 42-43. Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act and denied her claim.

### III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence means "more than a scintilla, but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citation and internal quotation marks omitted). Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995) (citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the Commissioner's decision must be upheld. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). The court may not substitute its judgment for that of the Commissioner. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

//
//

## IV. **DISCUSSION**

Plaintiff contends the ALJ erred because despite finding at step three that Plaintiff suffers from moderate difficulties in concentration, persistence or pace, he failed to include that limitation in his RFC determination or in his hypothetical to the vocational expert. Pl.'s Mot. (ECF No. 14) at 4-6. Defendant responds that moderate difficulties in concentration, persistence, or pace found at step three need not be included in the RFC assessment, and that the ALJ's RFC assessment and hypothetical to the vocational expert were supported by substantial evidence. Def.'s Cross-Motion/ Opp. (ECF No. 15-1) at 4. The Court agrees with Defendant.

An ALJ's determination at step three that a claimant has "a moderate difficulty in concentration, persistence, or pace does not automatically translate to a RFC finding with these limitations." Phillips v. Colvin, 61 F. Supp. 3d 925, 939 (N.D. Cal. 2014) (citing Sabin v. Astrue, 337 Fed. Appx. 617, 621 (9th Cir. 2009) and Murray v. Colvin, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014)); see Bennett v. Colvin, 202 F. Supp. 3d 1119, 1126-28 (N.D. Cal. 2016); Turner v. Berryhill, No. 15-16265, 2017 WL 2814436, at *4 (9th Cir. June 28, 2017) (unpublished) (ALJ did not err in failing to separately address claimant's "moderate difficulties in concentration, persistence, or pace" in the RFC determination, where medical evidence supported conclusion that limitation to "simple, repetitive tasks" adequately captured claimant's difficulties). This is so because the analysis the ALJ performs at step three is distinct from the analysis required to assess a claimant's RFC. See 20 C.F.R. § 404.1520(a)(4)(iii) (at step three, the ALJ must determine the medical severity of the claimant's impairments by evaluating whether the claimant has "an impairment(s) that meets or equals" a listed impairment); 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 SSR LEXIS 5 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of

impairments, including the impact of any related symptoms."). Thus, although the ALJ found at step three that Plaintiff suffered from "moderate difficulties" in concentration, persistence, and pace, he was not required to import that finding into his RFC determination. Phillips, 61 F. Supp. 3d at 939 ("Moderate limitations do not have to be exactly mirrored in the RFC determination."); Bennett, 202 F. Supp. 3d at 1126-28.

Instead, "[t]he relevant inquiry is whether the medical evidence supports a particular RFC finding." Phillips, 61 F. Supp. 3d at 940; Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008). In Stubbs-Danielson, the claimant was evaluated by a physician who said she had a "slow pace in thought and action" and other mental limitations, and by a psychologist, who noted the claimant's slow pace and mental limitations, but "ultimately concluded [claimant] retained the ability to "carry out simple tasks…." Id. at 1173. The ALJ found that she retained the RFC to perform "simple, routine, repetitive sedentary work" despite her limitations. On appeal, the claimant argued the ALJ erred in finding she retained the RFC to perform "simple, routine, repetitive sedentary work," contending the limitation did not capture her slow pace and mental limitations. Id. at 1173. The Ninth Circuit disagreed. Because the ALJ's RFC restriction to "simple, routine … work," was supported by the psychologist's report which took into account her pace and mental deficiencies in determining she could perform simple tasks, the Ninth Circuit upheld the ALJ's RFC determination as supported by substantial evidence, holding that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." Id. at 1175; see Bennett, 202 F. Supp. 3d at 1126 (citing Phillips, 61 F. Supp. 3d at 940).

Here, as in Stubbs-Danielson, the ALJ's determination that Plaintiff had the RFC to perform "simple, routine tasks in a non-public setting" was substantially supported by the medical evidence. The record below included the opinions of five

experts who opined on Plaintiff's capacity for concentration, persistence, and pace.

The first was Jaga Nath Glassman, M.D., a board-certified psychiatrist who conducted a consultative psychiatric disability evaluation of Plaintiff on September 6, 2012 and prepared a written report of her findings. AR 456-61. Dr. Glassman noted Plaintiff's difficulty tolerating stress and longstanding depression, AR 457, and her occasional difficulty completing serial 3's, AR 460, but found Plaintiff's "thought processes were coherent, relevant, and goal-directed," found her "able to follow all instructions," her behavior "socially appropriate," and her demeanor "calm, cooperative, polite, and respectful…." AR 459. Dr. Glassman opined that Plaintiff suffered from "Pain Disorder with Medical and Psychological Factors[,] Possible Dysthymic Disorder[,] History of Childhood Sexual Abuse[, and] Probable History of Childhood Neglect" as well as Borderline Personality Disorder. AR 461. In Dr. Glassman's view, that "[f]rom a psychiatric perspective," despite these impairments, Plaintiff remained "capable of behaving in a socially-appropriate manner and of getting along adequately with others … of understanding and following at least simple instructions … [and] of maintaining concentration, persistence, and pace and of adapting to changes and stresses in a workplace setting." Id.

The record also included evaluations by two state agency psychological consultants. The first, Nadine J. Genece, Psy.D., reviewed Plaintiff's medical records, and determined that Plaintiff suffered from "moderate" difficulties in maintaining concentration, persistence and pace. AR 84, 99. She determined that Plaintiff nevertheless retained the functional capacity to "maintain CPP [concentration, persistence, pace] for simple work related tasks over a normal workweek." AR 89, 104.

The second state agency consultant, Andres Kerns, Ph.D., reviewed Plaintiff's records on reconsideration of her denial of benefits. Dr. Kerns concurred with Dr. Genece's assessment of Plaintiff's ability to carry out instructions, except

that he regarded Plaintiff as "[m]oderately limited" in her ability to maintain concentration for extended periods. AR 121. He nevertheless concluded, as did Dr. Genece, that Plaintiff had the RFC to "maintain CPP for simple work related tasks over a normal workweek." Id. In a narrative explanation of his findings, he added that he believed Plaintiff was "able to meet the basic mental and emotional demands of competitive, remunerative, unskilled work (on a sustained basis)," could "[u]nderstand, carry out, and remember simple instructions" and "[m]ake simple work-related decisions," although he noted that she "would do best in work settings requiring minimal social interaction." AR 122.

The ALJ's determination that Plaintiff had the residual functional capacity to perform "simple, routine tasks in a non-public setting" despite her moderate difficulties with concentration, persistence, and pace, was consistent with, and substantially supported by, the opinions of Drs. Glassman, Genece, and Kerns. A fourth expert, Dr. Kent B. Layton, a clinical psychologist, testified at the hearing that based on his review of Plaintiff's medical records, he believed she had "moderate" deficits in concentration, persistence, and pace, AR 71, but he did not explain how those impairments translated into workplace restrictions, so his opinion did not conflict with the ALJ's RFC determination.

The ALJ's RFC determination was inconsistent, however, with the opinions of a fifth expert, psychiatrist Steven J. Davis, M.D. Dr. Davis treated Plaintiff and wrote a letter on July 18, 2013, in support of her claim of disability benefits. AR 638-39. Pertinent here, he stated in the letter that:

> It … is my professional medical opinion that she is 'permanently disabled (i.e. a condition that has existed five to six years already and which, even with (uncertain) improvement in these next two years, will leave her unable to be gainfully employed. [*Sic.*] She does not have the energy nor stamina to work part time, cannot lift or carry objects because of her arthritis and body pain, and cannot concentrate nor sustain even mild workplace stresses.

AR 639, 806.

In arriving at his RFC determination, the ALJ said he gave "little weight" to Dr. Davis's opinion, and greater weight to the opinions of Drs. Glassman, Genece and Kerns. AR 40-41. The ALJ "is responsible for determining credibility and resolving conflicts in the evidence." Bennett, 202 F. Supp. 3d at 1127. When resolving conflicts in medical opinions, "courts distinguish between three types of physicians: those who treat the claimant ('treating physicians') and two categories of 'nontreating physicians,' those who examine but do not treat the claimant ('examining physician') and those who neither examine nor treat the claimant ('non-examining physicians')." Murray v. Colvin, No. C-13-01182 DMR, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)). "A treating physician's opinion, while entitled to more weight, is not necessarily conclusive," id., and where it is "contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

Here, the ALJ gave the following rationale for assigning less weight to Dr. Davis's opinion:

> Dr. Davis, who began treating the claimant in March 2013, stated that the claimant was permanently disabled, that she lacks the stamina to work a part-time job, that she cannot lift or carry objects because of her arthritis and body pain, and that she cannot concentrate or sustain even mild workplace stresses. At the time he wrote his medical source statement, Dr. Davis had treated the claimant for approximately four months, equating to only three clinical sessions. While Dr. Davis took clinical notes during such sessions, such notes do not support the level of incapacity reflected in his opinion, nor do they indicate whether he conducted a detailed assessment of the claimant's physical limitations. Dr. Davis's opinion that the claimant could not concentrate or sustain even mild workplace stress is without substantial support in the treatment records, and it also contrasts with the findings and opinions of the psychiatric consultative examiner. Furthermore, the undersigned finds that Dr. Davis's statement of disability has no probative value because, as an opinion on an issue reserved to the

Commissioner, his statement is not entitled to controlling weight and is
not given special significance.

AR 40-41 (citations omitted).

The ALJ's reasons for discounting Dr. Davis's opinions were sufficiently specific, legitimate, and supported by the record, to withstand review. The ALJ was correct that Dr. Davis had only seen Plaintiff three times before writing his July 18, 2013 letter. The record shows Plaintiff saw him for office visits on March 27, 2013 (AR 601-02), May 8, 2013 (AR 595-96) and July 17, 2013 (AR 841-42). His limited history with Plaintiff was a legitimate reason to give his opinions relatively less weight in comparison with the opinion of a treating physician based on a longstanding relationship with a patient. A review of Dr. Davis's progress notes also supports the ALJ's explanation that they "do not support the level of incapacity reflected in his opinion." Specifically, in connection with the March 27, 2013 office visit, Dr. Davis indicated that part of his treatment plan for Plaintiff was that as a "[l]ong term goal" she "should consider return to part time employment," because she "needs the social stimulation and self esteem." AR 602. This treatment plan stood in unexplained contrast with his opinion in the July 18th letter that even if her condition improved, Plaintiff's impairments would still "leave her unable to be gainfully employed." AR 639, 806.

There is also support in the record for the ALJ's determination that "Dr. Davis's opinion that the claimant could not concentrate or sustain even mild workplace stress is without substantial support in the treatment records…." In his clinical notes for the March 27, 2013 office visit, Dr. Davis characterized her thought process as "linear," her thought content as "normal," noted her to be "easily distracted" and her mood "anxious." AR 601-02. Yet it was in connection with this office visit that he developed the treatment plan that included encouraging Plaintiff to "return to part time employment," suggesting he saw any observed concentration issues as non-disabling, and regarded a return to work as likely to

be therapeutic. In his notes relating to the May 8, 2013 office visit, Dr. Davis again described Plaintiff's thought process as "linear" and her thought content "normal," and this time characterized her concentration level as "appropriate" and her mood "improving." AR 595. In connection with the July 17, 2013 office visit, he again noted Plaintiff's thought process to be "linear" and her thought content "normal." AR 841. The "concentration" note is not legible, but it appears he described her mood as "depressed." Id. Dr. Davis's objective findings in his clinical notes from his three office visits with Plaintiff do not support the opinion he presented in his letter that she suffered from a disabling deficit in concentration, persistence, and pace. Thus, the ALJ's determination that Dr. Davis's opinion that Plaintiff "could not concentrate" was "without substantial support in the treatment records" was itself supported by the record.

Finally, the ALJ was correct in disregarding Dr. Davis's opinion that Plaintiff was "permanently disabled." Determinations of disability are reserved to the Commissioner, and medical opinions that a claimant is "disabled" or "unable to work" are not controlling. 20 C.F.R. § 404.1527(d)(1).

In sum, the ALJ's decision to resolve the conflicting opinions of the mental health experts by giving less weight to the opinions of Dr. Davis was not erroneous, because the reasons he gave for doing so were specific and legitimate, and substantially supported by the record.

Because the ALJ's RFC assessment was consistent with, and substantially supported by, the opinions of Drs. Glassman, Genece, and Kerns, his hypothetical to the vocational expert was not incomplete. Plaintiff's reliance on Brink v. Comm'r Social Sec. Admin., 343 Fed. App'x 211 (9th Cir. 2009) (unpublished), is therefore misplaced. In Brink, the Ninth Circuit held that a hypothetical to a vocational expert was inadequate because it referred to "simple, repetitive work" without mentioning the plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. Id. at 212. Brink distinguished Stubbs-Danielson because "the testimony in

Stubbs-Danielson … did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace." Id. Brink is an unpublished case, and most courts have limited Brink to the situation where the medical evidence does not support the conclusion that a plaintiff's limitations in concentration, persistence, or pace translate to a capacity to perform simple or repetitive work. See Bennett, 202 F. Supp. 3d at 1127-28 (listing cases). Here, the medical record does support the ALJ's determination that Plaintiff could perform "simple, routine tasks in a non-public setting" despite her difficulties with concentration, persistence, and pace. The reasoning of Brink is not applicable here. Instead, this case is controlled by Stubbs-Danielson. The Ninth Circuit, on June 28, 2017, applied Stubbs-Danielson rather than Brink in Turner v. Berryhill to the very argument Plaintiff raises here:

> The ALJ also did not err in the hypothetical questions posed to the vocational expert. An RFC determination limiting a claimant to "simple, repetitive tasks" adequately captures limitations in concentration, persistence, or pace where the determination is consistent with the restrictions identified in the medical evidence. As the RFC determination was consistent with Dr. Barrons' opinion, the ALJ did not err in posing hypothetical questions to the vocational expert regarding a claimant with an RFC of "no physical limitations but [ ] limited to performing only simple, routine, or repetitive tasks with occasional public contact," without separately mentioning Turner's moderate difficulties in concentration, persistence, or pace.

Turner v. Berryhill, No. 15-16265, 2017 WL 2814436, at *2 (9th Cir. June 28, 2017) (citation omitted). This case is similar to Turner. See AR 74.

In sum, the Court finds the ALJ did not err in his RFC determination and corresponding hypothetical to the vocational expert. Accordingly, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be granted.

## V. **CONCLUSION AND ORDER**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: October 24, 2017

*[signature]*
Barry Ted Moskowitz, Chief Judge
United States District Court